UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SCAROLA MALONE & ZUBATOV LLP, and
RICHARD J.J. SCAROLA,

                     Plaintiffs,                     14-cv-4518 (PKC)

         -against-                      MEMORANDUM
                                                 AND ORDER

VERIZON COMMUNICATIONS, INC., and
McCARTHY, BURGESS & WOLFF,

                     Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiffs Scarola Malone & Zubatov LLP ("SMZ"), proceeding pro se, and

Richard J.J. Scarola ("Scarola") bring this action against defendants Verizon Communications,

Inc.[1] ("Verizon") and McCarthy, Burgess & Wolf ("McCarthy").  Plaintiffs assert a breach of

contract claim and a cause of action under N.Y. General Business Law § 349 against Verizon

and claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq,

against McCarthy.  The claims arise out of defendant Verizon's attempts, through defendant

McCarthy, to collect on a terminated telecommunications service contract between SMZ and

Verizon.

        Defendants now move separately to dismiss the claims asserted against them

pursuant to Rule 12(b)(6), Fed. R. Civ. P.  (Docket # 30, 34.)  McCarthy also requests an award

of costs and fees under 15 U.S.C. § 1692k(a)(3).  For the reasons explained below, McCarthy's

motion to dismiss is granted on the FDCPA claim, the Court denies McCarthy's request for fees

---

[1] Verizon asserts that it is incorrectly sued herein as Verizon Communications, Inc. and Verizon New York Inc. is
the proper defendant.  (Cite.)

and costs, and the Court declines to exercise supplemental jurisdiction over plaintiffs' remaining state law claims.

BACKGROUND

I.      Factual Background

        The following facts are taken from the Further Amended Complaint.  (Docket # 29.)  SMZ is a New York Limited Liability Partnership and a law firm.  (F. Am. Compl't at 1.)  Plaintiff Scarola is a member of SMZ.  (Id.)  Verizon provided certain telecommunications services to SMZ until late May 2012[2] when SMZ moved their offices to a new location and cancelled services with Verizon.  (F. Am. Compl't ¶ 4.)  SMZ asserts that it "took all necessary steps to give effective notice to cancel all such services."  (F. Am. Compl't ¶ 7.)  Plaintiffs emphasize that Verizon provided services to SMZ or its predecessors in name, but services were not provided to or paid by Scarola individually.  (F. Am. Compl't ¶ 4.)

        After SMZ cancelled services with Verizon, plaintiff Scarola nevertheless continued to receive "numerous monthly invoices in increasing amounts and other communications demanding payments" from Verizon.  (F. Am. Compl't ¶ 9.)  The invoices and requests for payment referenced Account No. 6892005406 (the "Verizon Account"), an account which SMZ maintained with Verizon for the telecommunications services Verizon had provided to SMZ for their offices prior to May 2012; however, these demands for payment were addressed to and in the name of Scarola personally.  (F. Am. Compl't ¶¶ 1, 9.)  Plaintiffs attempted to contact Verizon numerous times by telephone and in writing regarding the demands for payment, but Verizon did not respond to plaintiffs' inquiries.  (F. Am. Compl't, ¶¶ 10-12.)

---

[2] The Further Amended Complaint does not specify a date when Verizon began providing services to SMZ.

Due to Verizon's persistent demands for payment on the Verizon Account and Verizon's failure to respond to plaintiffs' inquiries, "plaintiffs saw no recourse but to commence legal action against Verizon." (F. Am. Compl't ¶ 13.) SMZ filed a complaint, dated April 5, 2013, in the Civil Court of the City of New York, County of New York seeking monetary damages and a declaration that no amounts were owed to Verizon pertaining to Account No. 6892005406. (Summons & Compl't, Scarola Malone & Zubatov, LLP v. Verizon Communications, Inc., 9119 NCV 2013 (N.Y. Civ. Ct. Apr. 5, 2013).) In late July 2013, the parties settled. (F. Am. Compl't ¶ 14.) In a written agreement dated July 25, 2013, (the "Settlement Agreement"), Verizon agreed to pay $9,232.00 to SMZ, "zero-out" any remaining balance on the Verizon Account, and close the Verizon Account. (Dec. of William D. Christ in Supp. of Def. Verizon of New York Inc.'s Motion to Dismiss Pls' F. Am. Compl't, Ex. B.) (hereinafter "Settlement Agreement.")

After SMZ and Verizon finalized the Settlement Agreement, Scarola nevertheless continued to receive demands for payment from Verizon and defendant McCarthy. (F. Am. Compl't ¶¶ 16-17.) Although the Complaint does not specify the number of communications Scarola received from Verizon and McCarthy, the demands for payment were addressed to and in the name of Scarola, personally, and they demanded payment in "continually increasing amounts of no conceivable origin or basis." (F. Am. Compl't ¶¶ 16-17.) Scarola received written demands at an address at which he had previously received "virtually all of his personal and financial correspondence" from the late 1990s until 2012. (F. Am. Compl't ¶ 18.) McCarthy also called Scarola's home, sometimes multiple times on the same day and often beginning at or around 8:00 a.m. (F. Am. Compl't ¶ 21.) Furthermore, Scarola received communications demanding payment at his office, including e-mail communications and

numerous telephone calls.  (F. Am. Compl't ¶¶ 23, 26.)  "[O]n at least one occasion, the caller

was told to cease and that no further contact should be made."  (F. Am. Compl't ¶ 26.)  The

Complaint asserts that, rather than emailing Scarola at his SMZ e-mail address, which was

publically available, McCarthy "called the SMZ receptionist for the address and made

arrangements to send future e-mail communications for delivery to plaintiff Scarola by

transmittal to SMZ's receptionist."  (F. Am. Compl't ¶ 23.)  Plaintiffs describe these

communications as "tacitly threatening" and assert that the communications often included

seventy to eighty pages of allegedly unpaid, but false, invoices demanding payment from

Scarola.  (F. Am. Compl't ¶ 23.)  The demands did not mention or recognize SMZ but referenced

a relationship between Scarola and an entity called "Verizon-West."  (F. Am. Compl't ¶ 24.)

II.     Procedural Background

On May 1, 2014, SMZ filed a summons and complaint in Civil Court of the City

of New York, County of New York, seeking a declaratory judgment against Verizon that SMZ

did not owe any amounts to Verizon on the Verizon Account.  (Dec. of Concepcion A. Montoya

in Supp. of MB&W's Motion to Dismiss, Ex. 2.) (hereinafter "Endorsed Complaint.")  SMZ also

sought an award of money damages under the Fair Debt Collection Practices Act against Verizon

and McCarthy.  (Id.)  On June 23, 2014, Verizon removed the action to this Court (Docket # 2)

and subsequently filed a pre-motion letter requesting leave to file a motion for a more definite

statement under Rule 12(e), Fed. R. Civ. P., arguing that plaintiff failed to allege facts sufficient

to state a cause of action under the FDCPA.  (Docket # 3).  By order dated July 1, 2014, the

Court granted Verizon's request, specifying that the proper vehicle to challenge a complaint that

does not comply with Rule 8, Fed. R. Civ. P., is a motion to dismiss the complaint under Rule

12(b)(6), Fed. R. Civ. P.  (Docket # 7).  Subsequently, the Court granted leave to SMZ to amend

the complaint to take account of Verizon's arguments and include Scarola as an individual

plaintiff.  (Docket # 9).  Plaintiffs then filed an Amended Complaint on August 1, 2014 (Docket

# 14), adding Scarola as a plaintiff, and Verizon and McCarthy filed pre-motion letters

requesting leave to file a motion to dismiss the amended pleading.  (Docket # 19, 24).  Following

a pretrial conference on September 19, 2014 and with the consent of the parties, the Court

entered a declaratory judgment in favor of plaintiff and against defendant Verizon on Count I of

the Amended Complaint, declaring that plaintiffs owe no amounts to Verizon in connection with

the Verizon Account.  (Docket # 28).  The Court also granted leave to plaintiffs to again amend

their pleadings.  (Id. )  Plaintiffs filed a Further Amended Complaint on October 3, 2014.

(Docket # 29).  On October 24, 2014, McCarthy and Verizon each filed a motion to dismiss the

claims asserted against them in the Further Amended Complaint (Docket # 30, 34).  McCarthy

also moves for an award of fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## RULE 12(b)(6) STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

(2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Id.  Legal conclusions are not entitled to the presumption of truth, and a court assessing the

sufficiency of a complaint disregards them.  Id.  Instead, the Court must examine only the well-

pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an

entitlement to relief."  Id. at 679.  In assessing a complaint, courts draw all reasonable inferences

in favor of the non-movant.  See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (per curiam).

        "[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991)).  "[W]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint."  Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153) (2d Cir. 2002) (citations and internal quotation marks omitted)).  "[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."  Chambers, 282 F.3d at 153.  "[E]ven if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (quoting Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)) (internal quotation marks omitted).

## DISCUSSION

I.     Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq

        Plaintiff Scarola alleges that McCarthy violated the FDCPA through communications McCarthy made to Scarola demanding payment on "an ostensible debt" allegedly owed to an entity named "Verizon-West."  (F. Am. Compl't ¶¶ 46-57.)  Specifically, Scarola asserts that McCarthy violated sections 1692c, 1692d, and 1692e(2)(a) of the FDCPA,

15 U.S.C. § 1692.  (F. Am. Compl't ¶ 51.)  McCarthy moves to dismiss these claims on the grounds that the underlying debt is not a consumer debt subject to the FDCPA and, even if the debt is subject to the FDCPA, Scarola's assertion that no valid underlying debt existed bars the claim.

Congress enacted the FDCPA "with the aim of eliminating abusive practices in the debt collection industry, and also sought to ensure that 'those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.'" Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 89 (2d Cir. 2008) (quoting 15 U.S.C. § 1692e). Moreover, "[t]he FDCPA was passed to protect consumers from deceptive or harassing actions taken by debt collectors."  Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir. 2002).  Generally, in order for a plaintiff to recover under the FDCPA, a plaintiff must satisfy three threshold requirements: (1) the plaintiff must be a "consumer," (2) the defendant must be a "debt collector," and (3) the defendant must have committed some act or omission in violation of the FDCPA.  See 15 U.S.C. § 1692e-f; see also Murphy v. Bronson, Cawley, & Bergmann, LLP, No. 3:10-cv-1929 AJB (RBB), 2011 WL 2413447, at *6 (S.D. Cal. June 13, 2011) (citing Robinson v. Managed Accounts Receivable Corp., 654 F. Supp. 2d. 1051, 1057 (C.D. Cal. 2009) (listing these elements as threshold requirements)).

The terms "consumer" and "debt" are both statutorily defined.  Section 1692a defines the term "consumer" to be "any natural person obligated or allegedly obligated to pay any debt."  15 U.S.C. § 1692a(3).  However, "[t]he FDCPA applies only in instances where a debt collector attempts to collect a 'debt' within the meaning of the Act."  Degrosiellier v. Solomon & Solomon, P.C., No. 00-CV-1065 (NAM), 2001 WL 1217181, at *3 (N.D.N.Y. Sept. 27, 2001) (citing 15 U.S.C. § 1692(c)-(j)). The statute defines the term "debt" to mean "any

obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are *primarily for personal, family, or household purposes*, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5) (emphasis added).  Thus, the FDCPA does not cover actions arising out of commercial debts.  Goldman v. Cohen, 445 F.3d 152, 154 n.1 (2d Cir. 2006).  "To determine whether a particular debt is commercial or personal in nature, courts 'examine the transaction as a whole, paying particular attention to the 'purpose for which the credit was extended.'"  Anderson v. Granoff, Walker & Forlenza, P.C., No. 11 Civ. 4178 (DAB), 2012 WL 1066801, at *4 (S.D.N.Y. Mar. 27. 2012) (quoting Bloom v. I.C. System, Inc., 972 F.2d 1067, 1068 (9th Cir. 1992) (internal quotation marks omitted)).

For the reasons set forth below, the Court concludes that plaintiffs have not plausibly and adequately alleged that the plaintiff is a consumer obligated or allegedly obligated to pay a "debt" within the meaning of the statute.  Therefore, Scarola's FDCPA claims are dismissed.

a.   The Verizon Account

Plaintiffs non-conclusory allegations in the Further Amended Complaint regarding the nature of the underlying debt each refer to an alleged debt arising from the Verizon Account.  At the outset of the Further Amended Complaint, plaintiffs assert that this action arises out of a series of "abusive" efforts by "a collection agency," defendant McCarthy, to collect for cancelled services from "the individual plaintiff," Scarola, on the Verizon Account.  (F. Am. Compl't ¶ 1.)  Furthermore, the Complaint asserts that Scarola "had and has received" numerous invoices for payment, some of which reference the Verizon Account.  (F. Am. Compl't ¶ 9.)  The Court could reasonably infer from these allegations in the Further Amended Complaint that

McCarthy attempted to collect money from Scarola to satisfy outstanding amounts owed or allegedly owed on the Verizon Account.

Any debt or alleged debt owed on the Verizon Account is commercial in nature and not subject to the FDCPA. The Verizon Account reflected an agreement between Verizon and SMZ, a limited liability partnership engaged in the practice of law, for Verizon to provide certain telecommunications services to SMZ. (F. Am. Compl't ¶ 4.) The Further Amended Complaint makes clear that "those services were not contracted for by nor provided to the individual plaintiff on an individual basis, and were at all times paid for, to the extent of properly rendered by bills, by SMZ or such predecessors." (F. Am. Compl't ¶ 4.) The Further Amended Complaint also specifies that the Verizon Account telecommunications services provided to the law firm's offices. (F. Am. Compl't ¶¶ 4, 6.) Thus, any money owed or allegedly owed on the Verizon Account or for services provided by Verizon to SMZ is not money owed for services that were "primarily for personal, family, or household purposes . . . ," as required by the statute, 15 U.S.C. § 1692(a)(5). Because the underlying purpose of the transaction was to provide telecommunication services to a law firm's place of business, any debt or alleged debt associated with the Verizon Account is not a consumer debt covered by the FDCPA.

> b. Plaintiffs have not Plausibly and Adequately Alleged a Debt "primarily for personal, family, or household purposes" in a Non-Conclusory Manner

Although any debt arising from the Verizon Account is not subject to the FDCPA, the Further Amended Complaint also contains allegations that McCarthy attempted to collect on various unknown, false debts. However, beyond conclusory assertions, plaintiffs fail to allege that the demands for payment by McCarthy relate to consumer debts, as required by the FDCPA.

Specifically, the Further Amended Complaint alleges that after Verizon and SMZ reached a settlement agreement in 2013 regarding the demands for payment on the Verizon Account, McCarthy "began to harass plaintiff Scarola at home and at work, including making new demands for payment – this time for continually increasing amounts of no conceivable origin or basis." (F. Am. Compl't ¶ 16.) Even if the Court could reasonably infer from this factual assertion that the demands for payment arose from a transaction "primarily for personal, family, or household purposes," McCarthy argues that, because this allegation directly contradicts the factual allegations of the Endorsed Complaint, the Court should consider the allegations in the original Endorsed Complaint in place of those in the Further Amended Complaint. (Mem. of Law in Supp. of Def. McCarthy, Burgess & Wolff's Motion to Dismiss at 6.) McCarthy contends that the facts alleged in the original Endorsed Complaint unambiguously assert that McCarthy attempted to collect on the Verizon Account; thus, any debt McCarthy attempted to collect from Scarola was commercial. (Id. at 6-9.)

Although on a Rule 12(b)(6) motion a court must accept as true any non-conclusory allegations set forth in the complaint, "[t]here is authority supporting the notion that a court may disregard amended pleadings when they directly contradict facts that have been alleged in prior pleadings." Kilkenny v. Law Office of Cushner & Garvey, L.L.P., No. 08-CV-588 (KMK), 2012 WL 1638326, at *5 (S.D.N.Y. May 8, 2012). Most courts that have disregarded allegations in an amended complaint in order to consider contradictory allegations in a previous pleading have done so in special circumstances. See Colliton v. Cravath, Swaine & Moore, L.L.P., No. 08-CV-0040 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) ("Where a plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss . . . and directly contradicts the facts set forth in his original

complaint, a court is authorized to accept the facts described in the original complaint as true."
(citing Wallace v. New York City Dep't of Corr., No. 95 Civ. 4404, 1996 WL 586797, at *2
(E.D.N.Y. Oct. 9, 1996) (internal quotation marks omitted)); Kilkenny, No. 08-CV-588 (KMK),
2012 WL 1638326, at *5 (considering whether contradictory modifications in an amended
complaint have a dispositive effect on a court's ruling on a motion to dismiss); Palm Beach
Strategic Income, LP v. Salzman, No. 10-CV-261 (JS) (AKT), 2011 WL 1655575, at *6
(E.D.N.Y. May 2, 2011) (disregarding allegations in the most recent complaint that contradicted
plaintiffs' assertions in three previous complaints and prior briefs, but noting that "there are valid
reasons why plaintiff would amend a complaint in a contradictory fashion . . . [f]or example, a
plaintiff may acquire new information through discovery, or its own investigation, that
fundamentally alters its theory of the case") (citations omitted)).

        Special circumstances exist warranting consideration of the allegations of the
original Endorsed Complaint and disregarding the contradictory allegations of the Further
Amended Complaint.  Plaintiffs' previous allegations regarding McCarthy's demands for
payment directly contradict those in their amended pleadings.  In the original Endorsed
Complaint, plaintiff SMZ asserted that "[a]fter the settlement, Verizon's agent, defendant
McCarthy, . . . began to harass plaintiff at home and at work, after the settlement described above
resolved all open issues, for payment *of the same bills on the same account that were the subject
of the earlier litigation*."  (End. Compl't at 3.)  Verizon had argued in a pre-motion letter that
plaintiff had not alleged a claim under the FDCPA because SMZ had not alleged the nature of
the debt, plaintiff's status under the FDCPA, and either defendant's status under the FDCPA.
(Docket # 3).  In response, plaintiffs filed an Amended Complaint.  (Docket # 14)  Rather than
including the language that McCarthy began to harass Scarola for payment on the same account

- 11 -

that was subject to the earlier litigation, plaintiffs alleged "[a]fter the settlement, Verizon, on its own and through . . . defendant McCarthy, . . . began to harass Scarola at home and at work, after the settlement described above resolved all open issues that could reasonably be at issue, including making further demands for payment of bills *of no conceivable origin or basis*." (Amend. Compl't ¶ 16.)  As noted, plaintiffs further amended their pleadings and again modified the language describing the nature of the debts pursued by McCarthy, asserting that after the 2013 settlement, McCarthy began to harass Scarola "at home and at work, including making new demands for payment – this time for continually increasing amounts of no conceivable origin or basis." (F. Am. Compl't ¶ 16.)  Fairly read in the context of the prior allegations, plaintiffs' theory is that because McCarthy sought payment from Scarola on the same bills on the same account that was the subject of the earlier litigation, i.e. SMZ's Verizon Account, there then was no debt due and owing.  Because there was no debt due and owing by SMZ, plaintiffs leap to the implausible conclusion that the debt must have arisen from a transaction "primarily for personal, family, or household purposes."  The allegation, read in context, is implausible and conclusory. An extinguished commercial debt does not morph into a transaction for personal, family, or household purposes simply because the amount is not owed by the person from whom collection is sought.

   The Court considers the factual allegations in the original Endorsed Complaint, described above, in place of paragraph 16 of the Further Amended Complaint.  Because the factual allegations in the original Endorsed Complaint clearly allege an attempt by Verizon and McCarthy to collect on a debt arising from the Verizon Account, a commercial debt, those allegations do not state a claim for relief under the FDCPA.

The remainder of plaintiff's allegations regarding Scarola's status as a consumer as well as those asserting the nature of the debt at issue are also conclusory, and the Court disregards them in assessing the sufficiency of Scarola's FDCPA claim.  Referring to demands for payment made to Scarola from McCarthy, plaintiffs assert "those demands did not state the amounts demanded were for anything other than an obligation arising from an alleged primarily, personal, family or household obligation."  (F. Am. Compl't ¶ 20)    Plaintiffs again merely reiterate the statutory definition of "debt" in setting forth their fourth for relief: "Plaintiff Scarola has been pursued by defendant McCarthy in connection with a non-existent debt, false, debt, as alleged above, ostensibly owed to an entity it identified as "Verizon-West" with which neither plaintiff ever dealt to their knowledge, and in these circumstances, the ostensible 'debt,' such as it was, falls within the meaning of a "debt" as set forth in FDCPA § 1692a(5) . . . for purposes of protection by the FDCPA of a consumer such as plaintiff Scarola."  (F. Am. Compl't ¶ 49.)  See Iqbal, 556 U.S. at 678-79.

   c. Directing Collection at an Individual does not Convert a Debt into One Covered by the FDCPA

Plaintiffs also argue that even if the debt arose from a commercial transaction, or the Verizon Account, specifically,[3] their claim is nevertheless recoverable under the FDCPA because McCarthy's communications regarding payment were directed to Scarola personally. However, this argument fails.  A debt collector's actions in seeking payment on a debt, even if aimed at an individual, do not convert an otherwise commercial debt into a consumer debt.  See, e.g., Slenk v. Transworld Systems, Inc., 236 F.3d 1072, 1076 (9th Cir. 2001) ("We, too, refuse to

---

[3] Plaintiffs state "the non-debt ostensibly sought, as McCarthy now attempts to explain itself, pertains to an account of another which account itself was never delinquent and was long-ago closed."  (Pls. Mem. in Opp. to Mot. to Dismiss of Def. McCarthy, at 2.)  Plaintiffs go on to argue "[t]hough that other party's earlier transactions were commercial in character, that fact is irrelevant here . . . ."  (Id.)

ignore Congress's intent by defining a consumer debt in accordance with the actions of the debt collector, rather than the true nature of the debt."); <u>Util. Metal Research, Inc. v. Coleman</u>, No. 03 CV 1463 (SLT) (SMG), 2008 WL 850456, at *6 (E.D.N.Y. Mar. 28, 2008) (concluding that a debt collector's targeting of a company's CEO and president, personally, to collect on a debt that arose out of a commercial transaction between two businesses does not transform the debt into a consumer debt).   Thus, the fact that McCarthy targeted Scarola personally to collect on the Verizon Account, which reflected a transaction entered into between Verizon and SMZ for Verizon to provide telecommunications services to SMZ's offices, does not alter substance of the commercial debt.

Plaintiffs have not adequately alleged that McCarthy attempted to collect on a consumer debt arising from a transaction that was "primarily for personal, family, or household purposes," 15 U.S.C. § 1692a(5).  Thus, plaintiffs' FDCPA claim is dismissed and the Court does not reach McCarthy's argument that plaintiffs' claim that no underlying debt exists bars their FDCPA claim.

II.     Claims under New York State Law

A district court "may decline to exercise supplemental jurisdiction over" a state-law claim if, as here, "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  Its discretion to exercise supplemental jurisdiction in such a situation, however, "is not boundless." <u>Valencia ex rel. Franco v. Lee</u>, 316 F.3d 299, 305 (2d Cir. 2003).  "In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity—the 'Cohill factors.'" <u>Klein & Co. Futures, Inc. v. Bd. of Trade</u>, 464 F.3d 255, 262 (2d Cir. 2006) (citing <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 (1988)).  "[I]n the usual

case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." <u>Kolari v. New York–Presbyterian Hosp.</u>, 455 F.3d 118, 122 (2d Cir. 2006) (quoting <u>Cohill</u>, 484 U.S. at 350 n.7 (ellipsis omitted)).

This is such a case.  None of the <u>Cohill</u> factors supports the exercise of supplemental jurisdiction over plaintiffs' two remaining claims.  Moreover, this case does not implicate preemption issues and is not nearly ready for trial, unlike actions in which the Second Circuit deemed it proper for the district court to retain supplemental jurisdiction after federal claims were dismissed.  <u>See Valencia</u>, 316 F.3d at 306 (collecting cases).  Accordingly, the Court declines to exercise supplemental jurisdiction over plaintiffs' breach of contract and N.Y. General Business Law § 349 claims.

III.    McCarthy's Request for Fees and Costs

The FDCPA provides "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."  15 U.S.C. § 1692k(a)(3).  McCarthy asserts that, in response to McCarthy's pre-motion letters outlining arguments for dismissal, plaintiffs revised their Further Amended Complaint to contradict their prior pleadings in order to maintain a claim under the FDCPA against McCarthy; therefore, McCarthy argues, costs and fees should be awarded to McCarthy pursuant to section 1692k(a)(3).  An award of fees and costs is inappropriate here.  Even if meritless, "[t]he assertion of the claim [does] not by itself prove bad faith."  <u>Simmons v. Roundup Funding, LLC</u>, 622 F.3d 93, 97 (2d Cir. 2010).  Furthermore, McCarthy proffers no evidence that plaintiffs brought this action to purposefully harass McCarthy.  McCarthy's motion for fees and costs is denied.

CONCLUSION

For the reasons outlined above, defendant McCarthy's motion to dismiss the FDCPA claim is GRANTED.  McCarthy's motion for costs and fees pursuant 15 U.S.C. § 1692k(a)(3) is denied.  The Court declines to exercise supplemental jurisdiction over the remaining state law claims and they are DISMISSED without prejudice.  The Clerk is directed to close the case.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       June 24, 2015

- 16 -